UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRISTOPHER A.,

                Plaintiff,

    v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

                Defendant.

CASE NO. C18-5686-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1972.[1] He has an associate's degree, and has worked as a

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 1

computer support analyst and electronics analyst. (AR 110, 392, 405-10.)

Plaintiff applied for DIB in May 2015. (AR 227, 356-62.) That application was denied initially and upon reconsideration, and Plaintiff timely requested a hearing. (AR 260-62, 267-70.)

On April 9, 2017, and January 25, 2018, ALJ S. Andrew Grace held hearings, taking testimony from Plaintiff and a vocational expert (VE). (AR 149-226.) On May 4, 2016, the ALJ issued a decision finding Plaintiff not disabled. (AR 95-112.) Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on July 18, 2018 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity since April 24, 2015, the alleged onset date. (AR 98.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe Plaintiff's degenerative disc disease; cauda equina syndrome; posttraumatic stress disorder; anxiety disorder, not otherwise specified; and headaches. (AR 98-99.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 99-101.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has

demonstrated an inability to perform past relevant work. The ALJ found Plaintiff capable of performing light work with additional limitations: he can never climb ladders, ropes, or scaffolds, or crawl. He can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. He can occasionally push/pull, and operate foot controls. He can frequently handle/finger bilaterally. He must avoid concentrated exposure to vibrations, pulmonary irritants, and hazards. He is limited to performing simple, repetitive, and routine tasks consistent with unskilled work. He cannot interact with the public, but can occasionally interact with coworkers. He is limited to low-stress work, defined as work requiring few decisions/changes. (AR 101.) With that assessment, the ALJ found Plaintiff unable to perform past relevant work. (AR 110.)

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the help of the VE, the ALJ found Plaintiff capable of transitioning to other representative jobs, such as small product assembler, marker, final assembler, and document preparer. (AR 110-11.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in (1) assessing his disability and unemployability ratings

from the U.S. Department of Veterans Affairs (VA), (2) discounting his subjective symptom testimony and lay statements, and (3) discounting a consultative examiner's opinion. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

## VA ratings

The ALJ noted that the VA found Plaintiff to have a service-connected disability rating of 80% in 2011, based on his symptoms of cauda equina syndrome, including neurogenic bladder, fecal incontinence, and erectile dysfunction. (AR 103.) The VA subsequently found Plaintiff eligible for individual unemployability benefits, "based, in part, upon determinations by the VA that the claimant had limited range of motion of the lumbar spine, and would need to be near a bathroom." (AR 106.) The ALJ considered these VA ratings, but only gave them partial weight due to differences between the eligibility criteria for VA benefits and Social Security benefits, as well as the ALJ's conclusion that the medical evidence supported only the limitations identified in his RFC assessment. (*Id*.)

An ALJ must ordinarily give "great weight" to a VA determination of disability. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). However, a VA rating is not conclusive. *McLeod v. Astrue*, 640 F.3d 881, 886 (9th Cir. 2011). "Because the VA and SSA criteria for determining disability are not identical," the ALJ "may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *McCartey*, 298 F.3d at 1076.

Plaintiff argues that the ALJ failed to provide persuasive, specific, and valid reasons to discount the VA ratings, and therefore should have given them great weight. Dkt. 11 at 4. The Court disagrees: the ALJ properly relied on his finding that the medical evidence showed that

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 4

Plaintiff could work consistent with the RFC assessment (as explained in detail in the decision (AR 101-10), in contradiction to the VA's finding that Plaintiff was unemployable (AR 106). The ALJ did not "silently disregard" the VA ratings (as Plaintiff contends (Dkt. 11 at 4)); he provided a legally sufficient reason to discount the VA ratings in this case. *See Cassel v. Berryhill*, 206 Fed. Appx. 430, 432 (9th Cir. Dec. 15, 2017) (affirming an ALJ's discounting of a VA rating "based on inconsistency with other medical records that did not support a finding of 100% disability").

<u>Plaintiff's testimony and lay statements</u>

The ALJ discounted Plaintiff's testimony for multiple reasons: (1) his activities of daily living are not entirely consistent with his alleged functional limitations; and (2) the objective medical record indicates that Plaintiff's limitations are not as severe as he alleged, because Plaintiff sought little treatment for the conditions that he contends are disabling and his limited treatment was conservative in nature. (AR 103-05, 109-10.) Plaintiff argues that these reasons are not clear and convincing, as required in the Ninth Circuit. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

<u>Activities</u>

The ALJ summarized some of Plaintiff's activities and found them to be "not entirely consistent with his alleged functional limitations." (AR 103.) Some of the activities listed by the ALJ (*e.g.*, caring for a pet dog, do some housecleaning, shop for groceries for short periods of time, prepare simple meals, do some laundry, wash some dishes, water trees, retrieve the mail, ambulate, bathe) are not obviously inconsistent with Plaintiff's allegations, and the ALJ does not explain why he so interpreted them.

But the ALJ did explain in detail why he found Plaintiff's ability to drive to be inconsistent with his allegations: the ALJ found that driving requires using hand and foot controls while sitting,

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 5

and attending to multiple potential hazards. (AR 103.) This activity is reasonably inconsistent with Plaintiff's alleged hand-related limitations and his alleged sitting restrictions, as well as his alleged limitations in attention. Plaintiff does not specifically challenge this portion of the ALJ's rationale in his opening brief (Dkt. 11 at 6-7), and this portion of the ALJ's findings regarding Plaintiff's activities supports his assessment. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine a claimant's testimony where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills"). The ALJ's reliance on other activities is erroneous, but harmless in light of the remaining valid reasons. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

Treatment record – physical complaints

The ALJ found that Plaintiff received little treatment for allegedly disabling conditions, and that the treatment he did receive was conservative. (AR 105-07.) Specifically, the ALJ noted that Plaintiff did not seek any treatment with a urologist, gastroenterologist, or neurologist related to his claims of fecal and urinary incontinence, and that the record does not contain "current reports of incontinence." (AR 105.) The ALJ also emphasized that Plaintiff had not sought any treatment from a neurologist for his migraine headaches, and declined to take any preventative medicine for them "because he did not want to take additional daily pills." (*Id.*) The ALJ stated that Plaintiff had only been seen five times for physical complaints during the nearly three-year adjudicated period, and that providers recommended only conservative treatment during those appointments. (*Id.*)

Plaintiff argues that the ALJ erred in failing to consider that he had trouble obtaining referrals to specialists. Dkt. 11 at 8. The only evidence Plaintiff cites as evidence that he has requested referrals is his own statements to that effect (AR 204, 353-54); the treatment notes in

the record do not document that Plaintiff requested referrals to specialists during much of the adjudicated period, until after he had been denied Social Security benefits (AR 657-61, 700-04, 735-37, 895, 904-19).

Plaintiff also contends that the ALJ erred in finding that his minimal treatment undermined his allegations because he had trouble obtaining all of his treatment records and the ALJ merely held the record open rather than assist Plaintiff in obtaining the records. Dkt. 11 at 8. It is true that Plaintiff had trouble obtaining records connected to his VA disability determination, and Plaintiff's counsel explained at the hearing that these records had to be requested by the claimant themselves and agencies could no longer request them. (AR 199-201.) Counsel did not, therefore, request the ALJ's assistance in obtaining these records, and thus it seems disingenuous to contend now that the ALJ should have done more. (*Id.*) Furthermore, the outstanding records were evaluation reports, rather than treatment notes (*id.*), and thus would not pertain to whether Plaintiff received treatment at a frequency consistent with his complaints. Plaintiff has therefore failed to identify error in the ALJ's finding that he received minimal treatment. Plaintiff has not shown that the ALJ erred in finding that his treatment for physical complaints was minimal, or in discounting his allegations for that reason. *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received").

Lastly, Plaintiff argues that the ALJ "played doctor" by construing his conservative treatment against him. Dkt. 11 at 8. To the extent that the ALJ relied on evidence of conservative treatment for Plaintiff's cauda equina syndrome, the Commissioner apparently concedes that this reasoning was erroneous. Dkt. 15 at 9. This error is harmless in light of the ALJ's other valid

reasoning. *See Carmickle*, 533 F.3d at 1162-63.

For these reasons, the Court finds that the ALJ did not harmfully err in finding that Plaintiff's treatment for his physical conditions undermined his allegations of disabling physical limitations.

Treatment record – mental complaints

The ALJ found that Plaintiff's mental symptoms improved with treatment, specifically medication. (AR 107.) Plaintiff argues that the ALJ overlooked his testimony that his medications caused side effects that were worse than any benefit he received. Dkt. 11 at 9 (citing AR 165 (hearing testimony)). Plaintiff is mistaken: the ALJ discussed Plaintiff's experience with medication side effects, and noted that Plaintiff tried multiple medications in order to mitigate side effects. (AR 107.) The ALJ went on to find that Plaintiff eventually reported that his symptoms had improved and he no longer wanted to take mental health medications. (AR 107 (referencing AR 730, 897-98).) The ALJ also mentioned that Plaintiff told a provider that he did not want to try any other medications in light of his pending application for disability benefits. (AR 107 (referencing AR 626).) The ALJ reasonably construed (AR 109-10) Plaintiff's decision to stop using mental health medication and to avoid therapy for most of the adjudicated period to be inconsistent with his allegations of disabling mental limitations. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ permissibly inferred that the claimant's pain was not as disabling as alleged "in light of the fact that he did not seek an aggressive treatment program and did not seek an alternative or more-tailored treatment program after he stopped taking an effective medication due to mild side effects").

Because the ALJ provided multiple clear and convincing reasons to discount Plaintiff's subjective allegations, any errors are harmless and the ALJ's assessment is affirmed. The ALJ

relied on that same reasoning to discount Plaintiff's ex-wife's similar statements (AR 109 (referencing AR 397-04)), and because the ALJ's reasons were valid with regard to Plaintiff's testimony, those reasons apply with equal force to Plaintiff's ex-wife's similar statements. *See Valentine v. Comm'r of Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony")).

The Court now turns to consider another piece of lay evidence: a March 2015 form statement completed by Plaintiff's former manager, written at a time that Plaintiff was employed. (AR 355.) The manager stated that Plaintiff's back pain and migraines cause him to be less attentive and more forgetful, and he requires more time to complete even simple tasks. (*Id.*) The ALJ did not explicitly discuss or weigh this statement.

The Court agrees with the Commissioner that the ALJ's RFC assessment accounts for concentration and memory deficits, and thus is reasonably consistent with the manager's statement. *See* Dkt. 15 at 14-15. Although Plaintiff contends that the manager's described limitations that would be work-preclusive (Dkt. 16 at 5), Plaintiff was in fact employed at the time that the manager wrote the comments and the manager did not describe any particular functional limitations or express the most Plaintiff could do. Thus, the manager's statement is not particularly relevant to the ALJ's task in assessing Plaintiff's RFC, and because the ALJ's RFC assessment is arguably consistent with the manager's statement in any event, the ALJ did not err in failing to discuss it. *See, e.g.*, *Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (where physician's report did not assign any specific limitations or opinions in relation to an ability to work "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report

because the ALJ did not reject any of [the report's] conclusions).

## Medical opinion evidence

Alexander Patterson, Psy.D., performed a consultative psychological examination of Plaintiff in September 2015, and wrote a narrative report describing Plaintiff's symptoms and limitations. (AR 633-37.) Dr. Patterson's functional assessment reads as follows:

> The claimant's reasoning and judgment are normal. Understanding and memory are normal. Sustained concentration and pace are severely impaired due to physical pain, anxiety, and irritability. Social functioning is severely impaired due to anxiety and irritability. Adaptation skills are moderately impaired.
>
> Overall, the claimant's ability to function in a work setting appears to be severely impaired due to irritability and social anxiety. He will likely have difficulty with consistent attendance and timeliness due to poor persistence and low motivation. He will likely have difficulty completing work tasks due to focus/concentration problems. His ability to manage normal work-related stress appears to be moderately impaired. The claimant appears to have physical health problems that would be better assessed by a medical provider.

(AR 637.) The ALJ summarized Dr. Patterson's report and gave it partial weight, discounting it as inconsistent with the evidence showing limited treatment and reports of stability. (AR 108.) The ALJ also identified a specific inconsistency within Dr. Patterson's report: he described Plaintiff's concentration as intact upon examination and stated that there "was no evidence of concentration difficulties noted during conversation" (AR 636), yet found Plaintiff's concentration and pace to be "severely impaired" presumably based on Plaintiff's subjective report of significant impairment in those areas (AR 636, 637). Because the ALJ discounted Plaintiff's subjective self-reporting, the ALJ discounted Dr. Patterson's opinion to the extent he relied on Plaintiff's self-report in reaching his conclusions. (AR 108.)

Plaintiff argues that these reasons are not legally sufficient. A treating or examining physician's contradicted opinion may not be rejected without "'specific and legitimate reasons'

ORDER RE: SOCIAL SECURITY
DISCUSS APPEAL
PAGE - 10

supported by substantial evidence in the record for so doing." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Plaintiff argues that the ALJ erred in generally referencing "limited treatment" and "reports of stability," without specifically identifying evidence supporting those findings. Dkt. 11 at 17. The ALJ's decision as a whole discusses and references specific evidence on those points, however. (AR 106-07.) The ALJ was not required to restate all of these findings throughout the decision. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("Because it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five, we consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five." (internal citation omitted)). The ALJ reasonably characterized the record as indicating limited mental health treatment and generally stable mental health symptoms, and did not err in discounting Dr. Patterson's opinion as inconsistent with that record. *See Tommasetti*, 533 F.3d at 1041 (inconsistency with the record properly considered by ALJ in rejection of physician's opinions).

Furthermore, the ALJ reasonably found that Dr. Patterson's opinion regarding Plaintiff's concentration and pace deficits was based on Plaintiff's self-reporting rather than objective findings. (*Compare* AR 636 *with* AR 637.) The ALJ specifically identified Dr. Patterson's reliance on self-reporting with regard to a measurable function (concentration), and the ALJ's interpretation of the opinion is reasonable and supported by substantial evidence, which distinguishes this case from *Buck v. Berryhill*, cited by Plaintiff. Dkt. 11 at 17 (citing 869 F.3d 1040, 1049 (9th Cir. 2017)). Although Plaintiff posits that his performance during a psychological evaluation would not reflect his functioning at work (Dkt. 11 at 17), speculation on Dr. Patterson's

part about how Plaintiff may have functioned in a work environment would not amount to substantial evidence, either. Because, as explained *supra*, the ALJ did not err in discounting Plaintiff's subjective testimony, the Court finds that the ALJ did not err in discounting Dr. Patterson's opinion to the extent he relied on that testimony in reaching his opinion. *See Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("As the district court noted, however, the treating physician's prescribed work restrictions were based on Bray's subjective characterization of her symptoms. As the ALJ determined that Bray's description of her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements.").

## CONCLUSION

For the reasons set forth above, this matter is AFFIRMED.

DATED this 24th day of April, 2019.

Mary Alice Theiler
United States Magistrate Judge

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 12